### Scott et al. *v.* Rusk.

A party who resides out of the State may appeal at any time within two years from the date of the judgment.

A sale *omnium bonorum* is not a contract in the usual course of business, and, when it is assailed, parties claiming under it are bound to establish its reality by proper evidence.

Where a surviving wife takes possession of property of the matrimonial community, after the death of her husband, uses it as her own, and attempts to conceal and withhold it from the succession of her husband, she will render herself liable thereby for one half of the debts of the community.

APPEAL from the District Court of Madison, *Curry.* J. *Pepper,* for the appellants, to establish the responsibility of the wife for one half of the community debts, cited the Civil Code, art. 2382. *Flood* v. *Shamburg,* 3 Mart. N. S. 622. *Chapman* v. *Kimball,* 6 Rob. 94. *Lynch* v. *Benton,* 12 Rob. 113.

*A. Pierse,* for the defendant.

The judgment of the court was pronounced by

ROST, J. The motion to dismiss made in this case must be overruled; the plaintiffs reside out of the State, and appealed within two years from the date of the judgment.

The plaintiffs seek to render the defendant responsible for the amount of a written obligation given by her late husband for goods furnished to the community, on the ground that she has intermeddled in the affairs of the community, and taken possession of all the property thereto belonging, without having caused an inventory to be made. The answer is a general denial. The court below gave judgment in favor of the defendant, and the plaintiffs appealed.

It is in proof that *James B. Rusk,* on the 2d day of December, 1837, was the owner of two houses and lots, four slaves, a stock of goods, furniture and other personal property, all of which he, on that day, pretended to convey by public act to one *Charles M. Burland,* his brother-in-law, for the sum of $24,500, for which amount *Burland* gave to *Rusk* four promissory notes for $6,125 each, the first payable on the 1st day of January, 1842, and the others annually thereafter; to secure the payment of which notes a mortgage was retained on all of said property.

From the time this sale took place, *Rusk* and the defendant lived in the dwelling house, and controlled the property embraced in the act of sale, until the death of *Rusk,* which took place on the 1st April, 1839, and the defendant continued in posses sion afterwards.

In the meantime, however, the defendant and *C. M. Burland,* her brother, made a conveyance of all the above mentioned real property and slaves, and one section of new land, which had been entered in the name of *Burland* after his purchase from *Rusk,* to one *H. P. Morancy,* in full consideration for which they acknowledged the receipt of $2,073. In this deed, they warranted the property free from all encumbrances, and afterwards *Morancy* re-conveyed to the defendant all said property, except the section of land which he retained, and one slave, who was conveyed to *Burland.*

In this re-transfer, it is stated that the sale to *Morancy* was intended to operate merely as a mortgage, to secure a debt due to him by *James B. Rusk,* for $1,573, and $500 more, which he had paid to raise a mortgage on the property. It is further recited in this act, "that *C. M. Burland* had previously made a deed of gift of all said property, including the section of land, to the defendant; but, in as much as *Burland was always the rightful owner of this land,*" defendant relinquished to him the balance of the price to be paid by *Morancy,* which in all amounted to $3,500. It is also in proof that the notes given by *Burland* to *Rusk* had not been presented for payment at the time this case was tried in the court below, though some of them were due at that time.

A sale *omnium bonorum* is not a contract in the usual course of business, and when it is assailed, parties claiming under it are bound to establish its reality by proper evidence. This has not been attempted in this case. On the contrary, the evidence shows that, after the sale, the defendant and her husband continued to enjoy the property as before, till he died, and that she has continued

SCOTT
v.
RUSK.

to enjoy it ever since. *Burland*, the brother, who, it is pretended, gave it to her, lived at her house, and had no means; and the fact that the property was transferred to her free from encumbrances, necessarily implies the destruction of the notes stated to have been given by *Burland* to *Rusk*, and not due at the time of the death of the latter.

We had hoped that the stern rebuke which transactions such as this uniformly receive from this court, would, ere this, have satisfied parties and their counsel, that they were not a profitable source of litigation. We deplore the ruin brought upon a woman in this case by her advisers, but we have not the means of saving her; we believe the contracts adduced in evidence to be barefaced simulations, and it is our duty to say so. The property therein described has never ceased to form part of the *acquêts* and gains, and the defendant, by retaining and using it as her own, without having caused any inventory to be made, and by attempting to conceal it and withhold it from the succession of her husband, has made herself liable for one-half of the community debts. The claim of the plaintiffs for the other half, must be exercised against the heirs or legal representatives of the husband.

It is therefore ordered that the judgment be reversed, and that there be judgment in favor of the plaintiffs, against the defendant, for the sum of $432 21, with legal interest thereon from the 13th day of November, 1841, till paid, and costs in both courts. It is further ordered that the rights of the plaintiffs against the heirs and legal representatives of *James B. Rusk*, for the remainder of their claim, be reserved.